IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHARLES LUTTRELL, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| v. ) | No. 10-3137-KHV |
| ) | |
| DR. STEWART GROTE, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff, a former pretrial detainee and inmate at the Corrections Corporation of America ("CCA") facility in Leavenworth, Kansas, brings suit against John and Jane Doe defendants, the Managing Director of Facility Operations at CCA, the Regional Medical Director at CCA, Warden Shelton Richardson, Mindy Graham (CCA Health Services Administrator), Dr. Stewart Grote, Dr. Linda McCandless, Nurse Amanda LNU, Nurse Katy LNU and Nurse Thelma LNU.[1] In his amended complaint, plaintiff asserts that by denying him adequate medical care, defendants violated his right to due process under the Fifth Amendment and his right to be free from cruel and unusual punishment under the Eighth Amendment.[2] See Amended Complaint (Doc. #5) filed July 28, 2010. Liberally construed, plaintiff seeks damages under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and 42 U.S.C. §§ 1981, 1983, 1985 and 1986.

---

[1] In his First Amended Complaint (Doc. #5), plaintiff only partially identified Drs. Grote and McCandless. Based on the Martinez Report, defendants concede that plaintiff is referring to Dr. Stewart Groete and Dr. Linda McCandless. See Exhibits A and B to Notice of Filing Of Martinexz Report (Doc. #23) filed March 11, 2011. Accordingly, the case caption is so amended.

[2] It appears that plaintiff was an inmate at CCA before and after he was sentenced in federal court. Accordingly, he asserts protection under both the Fifth and Eighth Amendments, and to the extent that defendants acted under state law, the Fourteenth Amendment.

On January 14, 2011, the Court dismissed the John and Jane Doe defendants, the Managing Director of Facility Operations at CCA, the Regional Medical Director at CCA, Warden Shelton Richardson and Mindy Graham (CCA Health Services Administrator).  See Order (Doc. #13) (Crow, J.).  This matter is before the Court on the Motion To Dismiss Of Defendants Corrections Corporation Of America (CCA), Dr. Grote, Dr. McCandless, et al. (Doc. #28) filed April 5, 2011, which the Court considers only as to Dr. Grote, Dr. McCandless, Nurse Amanda LNU, Nurse Katy LNU and Nurse Thelma LNU,[3] and plaintiff's Motion For Leave To Amend, Add Defendants, Causes Of Action And Change The Caption (Doc. #33) filed April 27, 2011.  For reasons stated below, the Court sustains defendants' motion to dismiss and overrules plaintiff's motion to amend.

**I.    Motion To Dismiss Amended Complaint**

   A.    Legal Standards

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face.  Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The specific allegations in the complaint must plausibly support a legal claim for relief.  Kay v.

---

[3] CCA joined in the motion to dismiss but it is not named as a defendant in the Amended Complaint (Doc. #5).  In addition, on November 30, 2010, the Court dismissed CCA as a defendant.  See Order (Doc. #9) (Crow, J.).  The Court therefore does not address the specific arguments which CCA has asserted in the motion.  The motion is also purportedly brought by "unidentified CCA personnel."  Because plaintiff has at least partially identified the remaining defendants (Dr. Grote, Dr. McCandless, Nurse Amanda LNU, Nurse Katy LNU and Nurse Thelma LNU), who all joined in the instant motion, the Court does not consider the motion as to "unidentified CCA personnel" not named in the amended complaint.

Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007). Rather than deciding whether a claim is "improbable," the Court determines whether the factual allegations in the complaint sufficiently raise a right to relief above the speculative level. See id. (quoting Twombly, 550 U.S. at 556). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 129 S. Ct. at 1950.

The Court need not accept as true those allegations which state only legal conclusions. See id. Plaintiff bears the burden to frame his complaint with enough factual matter to suggest that he is entitled to relief; it is not enough for him to make threadbare recitals of a cause of action accompanied by mere conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Iqbal, 129 S. Ct. at 1949. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 1950. Finally, the degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2) depends upon the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

Because plaintiff proceeds pro se, the Court construes his complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d

1106, 1110 (10th Cir. 1991). The Court does not, however, assume the role of advocate for a pro se litigant. See id.

B.  Factual Background

The First Amended Complaint (Doc. #5) alleges the following facts:[4]

On February 12, 2010, plaintiff arrived at the CCA facility in Leavenworth, Kansas. Upon plaintiff's arrival and pursuant to CCA policy, three nurses (Amanda, Katy and Thelma) destroyed plaintiff's medications. As a result, plaintiff went several days without prescribed medications for pain, depression, anxiety, bipolar disorder and attention deficit disorder ("ADD").

Four days after his arrival, on February 16, 2010, Dr. Grote examined plaintiff and prescribed certain medications. On February 20, 2010, Dr. McCandless examined plaintiff and prescribed certain medications.[5] For some undefined period of time, the Managing Director of Facility Operations at CCA, the Regional Medical Director at CCA, Warden Richardson and Mindy Graham denied plaintiff the medications prescribed by Drs. Grote and McCandless.

On March 4, 2010, plaintiff transferred to a Bureau of Prisons ("BOP") facility in Fort Worth, Texas. On April 22, 2010, plaintiff returned to the CCA facility in Leavenworth. From April 22 to May 1, 2010, the Managing Director of Facility Operations at CCA, the Regional Medical Director

---

[4] Defendant's motion to dismiss refers to matters contained in a Martinez report, but such matters do not appear in plaintiff's complaint. See Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978). Because defendants filed their motion under Rule 12(b) and have not included a statement of uncontroverted facts in compliance with D. Kan. Rule 56.1(a), the Court declines to convert defendant's motion to dismiss into one for summary judgment or consider materials beyond the complaint. See Smith v. Plati, 258 F.3d 1167, 1176 (10th Cir. 2001) (on motion to dismiss, police reports constitute evidence outside of complaint which court may not consider).

[5] On February 20, 2010, Dr. McCandless told plaintiff that doctors at the facility would not treat ADD. During plaintiff's entire stay at the CCA facility, defendants refused to treat him for ADD.

at CCA, Warden Richardson, Mindy Graham, Dr. Grote and Dr. McCandless "facilitated" the denial of plaintiff's medications. First Amended Complaint (Doc. #5) ¶ 12. From April 26 to June 3, 2010, all defendants except Dr. McCandless denied plaintiff prescribed anxiety medications.

On May 1, 2010, Dr. McCandless re-ordered plaintiff's medications. That day, Dr. Grote also operated on plaintiff's leg to remove a tumor. On May 4, 2010, Dr. Grote drained a large amount of clotted blood from plaintiff's leg after he noted that plaintiff's leg was swollen and his wound had re-opened. On May 5, 2010, nurse Katy gave plaintiff the wrong medication. From May 5 through 11, 2010, plaintiff could not get clean bandages for his leg wound. As a result, plaintiff acquired a severe staph infection, Methicillin-resistant Staphylococcus aureus (MRSA). On May 11, 2010, nurse Thelma gave plaintiff the wrong dosage of Benadryl. On May 13, 2010, nurse Amanda did not enter correct orders in plaintiff's medical file.

From July 18 to 23, 2010, plaintiff did not receive prescribed pain medications.

Plaintiff asserts claims for denial of adequate medical care against Dr. Grote, Dr. McCandless, Nurse Amanda LNU, Nurse Katy LNU and Nurse Thelma LNU.[6]

C.   Analysis

1.   Claims Under 42 U.S.C. Sections 1981, 1983, 1985 and 1986

Plaintiff asserts claims under multiple civil rights statutes, 42 U.S.C. § 1981, 1983, 1985 and 1986, but he has not alleged a factual basis for any such claims. First, plaintiff asserts a claim under

---

[6] Plaintiff does not name CCA in his amended complaint. In addition, as explained above, the Court dismissed the John and Jane Doe defendants, the Managing Director of Facility Operations at CCA, the Regional Medical Director at CCA, Warden Shelton Richardson and Mindy Graham (CCA Health Services Administrator). See Order (Doc. #13) (Crow, J.).

-5-

Section 1981,[7] which requires that plaintiff allege that because of race, defendants deprived him of one of four protected interests: (1) the right to make and enforce contracts; (2) the right to sue, be a party and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to the same "pains and punishments" as white persons. Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1267 (10th Cir. 1989). Because the amended complaint has not alleged plaintiff's race, he cannot state a claim under Section 1981.

To recover on a claim under Section 1983,[8] plaintiff must prove that defendants deprived him of a constitutional right and that they acted under color of state law in doing so. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); see Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995) (only proper defendants under Section 1983 are those who represent state in some capacity). Plaintiff has not alleged that defendants represented the state in any

---

[7] Section 1981(a) provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

[8] Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

capacity.[9] Accordingly, he has not stated a claim under Section 1983.

Plaintiff asserts a civil conspiracy claim under 42 U.S.C. § 1985(3), which prohibits conspiracies that are (1) motivated by racial or other class-based discriminatory animus and (2) aimed at rights protected against public and private interference. See Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993), cert. denied, 510 U.S. 1093 (1994). Because plaintiff has not alleged that he belongs to a protected class, he cannot maintain a civil conspiracy claim under Section 1985. Accordingly, the Court dismisses plaintiff's claims to the extent they are brought under 42 U.S.C. § 1985(3).

Plaintiff also asserts a claim under Section 1986, which provides as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

42 U.S.C. § 1986. To bring a Section 1986 claim, plaintiff must first show a conspiracy in violation of Section 1985(3). Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir. 1990). Because

---

[9] Under Section 1983, a private individual's conduct constitutes state action only if it is "fairly attributable" to the state. See Pino v. Higgs, 75 F.3d 1461, 1465 (10th Cir. 1996) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). Conduct is "fairly attributable" to the state if (1) the deprivation is caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state; and (2) the private party acted together with or obtained significant aid from state officials or engaged in conduct otherwise chargeable to the state. See id. Here, plaintiff does not allege that state rules of conduct created the deprivation or that defendants acted in concert with state officials or engaged in conduct otherwise chargeable to the state. Accordingly, his allegations do not state a claim for relief under Section 1983. Cf. Comiskey v. JFTJ Corp., 989 F.2d 1007, 1010-11 (8th Cir. 1993) (bar not state actor merely because state issued it liquor license); Tunca v. Lutheran Gen. Hosp., 844 F.2d 411, 413 (7th Cir. 1988) (hospital not state actor merely because regulated by state); Willis v. Carroll Twp., No. 1:07-CV-0949, 2008 WL 644762, at *5 (M.D. Pa. Mar. 5, 2008) (attorney not state actor merely because licensed by state).

plaintiff has not stated a claim under Section 1985(3), he likewise has failed to state a claim under Section 1986.  See Kirby v. Dallas Cnty. Adult Pro. Dept., 359 Fed. Appx. 27, 35 (10th Cir. Dec. 28, 2009); Taylor v. Nichols, 558 F.2d 561, 568 (10th Cir. 1977).

For the above reasons, the Court dismisses plaintiff's claims under 42 U.S.C. §§ 1981, 1983, 1985 and 1986 for failure to state a claim on which relief can be granted.

### 2.   *Bivens* Claims

Defendants argue that the Court lacks jurisdiction to hear plaintiff's Bivens claims because he has not alleged how defendants acted under color of federal law.  Doc. #29 at 7.  This Court has addressed whether Bivens liability can be extended to employees of a privately operated prison, as follows:

> Although the Tenth Circuit has not resolved the issue, two circuit courts have declined to extend Bivens liability to individual employees of a privately operated prison where state law provides alternate remedies for the inmate's alleged injuries. See Alba v. Montford, 517 F.3d 1249, 1254-55 (11th Cir. 2008); Holly v. Scott, 434 F.3d 287, 295-97 (4th Cir.), cert. denied, 547 U.S. 1168 (2006).  In both cases, the courts of appeal concluded that where plaintiff has alternative state or federal remedies available, the Supreme Court would not extend Bivens liability to employees of a privately operated prison.  See Alba, 517 F.3d at 1252-54; Holly, 295-96.  This Court agrees.  On three occasions from 1971 to 1980, the Supreme Court has recognized an implied cause of action for money damages arising directly under the Constitution.  See Bivens, 403 U.S. 388 (implied action against federal officials in individual capacities for Fourth Amendment violation); Davis v. Passman, 442 U.S. 228 (1979) (implied action against federal official for Fifth Amendment violation); Carlson v. Green, 446 U.S. 14 (1980) (implied action against federal prison officials for Eighth Amendment violation).  Since 1980, however, the Supreme Court has refused to recognize a new cause of action for money damages arising directly from the Constitution.  See Peoples III, 422 F.3d at 1098.
>
> In Correctional Services Corporation v. Malesko, 534 U.S. 61 (2001), the Supreme Court underscored its hesitation to imply a Bivens cause of action in a new circumstance. In Malesko, a federal offender sued Correctional Services Corporation ("CSC"), a private corporation which operated a halfway house under contract with the Bureau of Prisons, for Eighth Amendment violations.  The Supreme Court refused to extend Bivens to claims against private entities.  See id. at 66.  In so holding, the

> Supreme Court noted that it has consistently refused to extend Bivens except "to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct." See id. at 70 (emphasis in original). The Supreme Court emphasized the fact that plaintiff had alternative remedies available and found that the Supreme Court's three decade-long caution toward extending Bivens in any new context foreclosed an extension in that case. See id. at 72-74.
>
> Under Malesko, Albo and Holly, and for reasons stated in the Peoples III majority opinion, this Court finds that a federal prisoner has no implied right of damages against an employee of a privately operated prison when state or federal law affords an alternate cause of action for the alleged injury. See Peoples III, 422 F.3d at 1096-1103. Thus, to determine whether plaintiff has stated a claim upon which relief may be granted, the Court must determine whether state law provides an alternative remedy for plaintiff's alleged injuries. See id. at 1103-08.

Lindsey v. Bowlin, 557 F. Supp.2d 1225, 1229-30 (D. Kan. 2008) (Lindsey I) (Vratil, J.) (footnotes omitted); see Menteer v. Applebee, No. 04-3054-MLB, 2008 WL 2649504 (D. Kan. June 27, 2008) (following Lindsey I) (O'Hara, M.J.); Lindsey v. Corrs. Corp. of Am., No. 07-3067-EFM, 2009 WL 2703691 (D. Kan. Aug. 25, 2009) (Melgren, J.) (following Lindsey I and Menteer).

Here, defendants have not addressed the applicable legal standard, i.e. whether an adequate remedy exists under state law, and they have not replied to plaintiff's argument that state tort remedies are inadequate. Cf. Peoples v. CCA Det. Ctrs., 422 F.3d 1090, 1101 (10th Cir. 2005) (no Bivens right of action against employees of private prison for alleged constitutional deprivations when alternative state causes of action for damages, such as medical malpractice, are available to plaintiff). In these circumstances, the Court overrules defendant's argument that a Bivens remedy is categorically unavailable against employees of a private prison.[10] See Lindsey I, 557 F. Supp.2d

---

[10]   On November 1, 2011, the Supreme Court heard oral argument in a case involving this precise issue. See Minneci v. Pollard, 131 S. Ct. 2449 (2011) (granting certiorari review in Pollard v. The GEO Group, Inc., 629 F.3d 843 (9th Cir. Dec. 10, 2010), which held Bivens remedy
(continued...)

at 1231 (overruling motion to dismiss because defendant did not attempt to show availability of alternate state law remedies).

Defendants next argue that plaintiff has not stated a claim on which relief can be granted for deliberate indifference to his medical needs. Prison officials violate the Eighth Amendment when they are deliberately indifferent to an inmate's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981). Deliberate indifference may be proven by showing that prison officials intentionally denied, delayed access to or interfered with an inmate's necessary medical care. See Estelle, 429 U.S. at 104–05; Jones v. Hannigan, 959 F. Supp. 1400, 1406 (D. Kan. 1997); see also Farmer v. Brennan, 511 U.S. 825, 835–37 (1994) (prison officials act with deliberate indifference to inmate's health if they know that he faces substantial risk of serious harm, and disregard that risk by failing to take reasonable measures to abate it). Under this standard, plaintiff must show more than negligent or inadvertent failure to provide adequate medical care and more than a mere difference of opinion with prison medical staff regarding the proper course of treatment. See Riddle v. Mondragon, 83 F.3d 1197, 1203 (10th Cir. 1996); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993); Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993); Ramos, 639 F.2d at 575; Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976); Jones, 959 F. Supp. at 1406.

A medical need is serious if failure to treat an inmate's condition could result in "further significant injury" or "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104; see also Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000) (medical need is "serious" if it has been

---

[10](...continued)
available to inmate against employees of private prison because state tort remedies alone insufficient to displace Bivens remedy).

diagnosed by physician as one requiring treatment or if it is so obvious that even lay person would easily recognize need for doctor's attention). Mere delay in treatment, however, without a showing of harm, does not constitute a sufficiently serious deprivation of medical care. See Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990). Hence, an inmate must allege facts showing either that he suffered actual harm, id., or that he presently faces a substantial health risk that may ripen into actual harm. See Farmer, 511 U.S. at 845; see also Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001) (inmate must show he suffered "substantial harm" as result of delay); Olson, 9 F.3d at 1477 (same); cf. Steele v. Shah, 87 F.3d 1266, 1268-69 (11th Cir. 1996) (inmate "feelings of hopelessness and helplessness" after discontinuation of psychotropic drugs made him potential suicide risk, which constitutes serious medical need); Torraco v. Maloney, 923 F.2d 231, 235 & n. 4 (1st Cir. 1991) (jury could find serious mental health need based on past suicide attempt, assault on prison official and overdose on pills).

Plaintiff alleges that when he first arrived at CCA, he went several days without prescribed medications for pain, depression, anxiety, bipolar disorder and ADD. Plaintiff asserts that he did not receive medications because upon his arrival on February 12, 2010 and pursuant to CCA policy, nurses Amanda, Katy and Thelma destroyed his medications. Plaintiff does not allege that he suffered substantial harm or that he presently faces a substantial health risk that may ripen into actual harm, or that the nurses knew that by disposing of the medications, he faced a substantial risk of harm. See Farmer, 511 U.S. at 835-37; see also Boles v. Dansdill, 361 Fed. Appx. 15, 19 (10th Cir. 2010) (no Eighth Amendment claim where inmate could not show physical harm from denial of necessary medications); Sealock, 218 F.3d at 1210 (delay in providing medical care to prisoner

violates Eighth Amendment only where substantial harm results).[11] The Court therefore sustains the motion to dismiss as to the denial of medications when plaintiff arrived at CCA on February 12, 2010.[12]

Plaintiff alleges that from April 22 to May 1, 2010, Drs. Grote and McCandless "facilitated" the denial of his medications. First Amended Complaint (Doc. #5) ¶ 12. Plaintiff does not allege what particular medications he did not receive or how Drs. Grote and McCandless facilitated the denial of such medications. To state a Bivens claim, plaintiff must allege direct personal participation by each individual defendant. Steele, 355 F.3d at 1214. The doctrine of respondeat superior does not apply unless plaintiff can allege an "affirmative link" between the constitutional deprivation and the supervisor's personal participation, exercise of control or direction or failure to supervise. Meade v. Grubbs, 841 F.2d 1512, 1527-28 (10th Cir. 1988); see Martinez v. Lappin, No. 04-3023-KHV, 2004 WL 2457800, at *2 (D. Kan. Nov. 1, 2004). As Judge Crow explained in a prior order, plaintiff's statement that defendants "facilitated" the denial of his medications is "completely conclusory." Order (Doc. #13) at 1-2. In addition, plaintiff has not alleged that Drs. Grote and McCandless knew that he faced a substantial risk of serious harm and intentionally

---

[11] Substantial harm may be shown by proof that considerable pain resulted from the delay in medical treatment. See Sparks v. Rittenhouse, 164 Fed. Appx. 712, 718 (10th Cir. 2006) (allegations of numerous requests for medical treatment because of pain and claims of loss of feeling, loss of grip, and extreme pain sufficiently allege substantial harm); Garrett, 254 F.3d at 950 (same). Plaintiff has not alleged any such harm as to the denial of medications when he arrived at CCA on February 12, 2010.

[12] Elsewhere, plaintiff alleges that (1) on May 5, 2010, nurse Katy gave him the wrong medication, (2) on May 11, 2010, nurse Thelma gave him the wrong dosage of Benadryl and (3) on May 13, 2010, nurse Amanda did not enter correct orders in his medical file. Plaintiff does not allege that on these three occasions, the nurses knew that he faced a substantial risk of serious harm and intentionally disregarded that risk. See Farmer, 511 U.S. at 835-37. At most, plaintiff alleges that the nurses were negligent, but such allegations are insufficient to state a claim under Bivens.

disregarded that risk. The Court sustains defendant's motion as to the claim against Drs. Grote and McCandless for denial of medications from April 22 to May 1, 2010.

Plaintiff alleges that from April 26 to June 3, 2010, all defendants except Dr. McCandless denied him prescribed anxiety medications and that from July 18 to 23, 2010, he did not receive prescribed pain medications. Again, plaintiff has not alleged what particular medications he did not receive, how each defendant personally participated in the denial of his medications or that defendants knew that by denying him anxiety and pain medications, he faced a substantial risk of serious harm. The Court therefore sustains defendant's motion as to these claims.

Finally, plaintiff alleges that from May 5 through 11, 2010, he could not get clean bandages for his leg wound and as a result, he acquired a severe staph infection. Plaintiff does not allege that defendants knew that he did not have clean bandages, how they otherwise personally participated in the denial of such bandages or that any such denial amounted to deliberate indifference. At most, plaintiff has stated a claim for negligence or malpractice. See Farmer, 511 U.S. at 835, 841 (deliberate indifference standard not satisfied by either negligence or constructive notice); see also Ramos, 639 F.2d at 575 (accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment do not constitute medical wrong under Eighth Amendment). Accordingly, the Court dismisses plaintiff's claim that defendants did not provide him clean bandages from May 5 through 11, 2010.

For these reasons, the Court sustains defendants' motion to dismiss plaintiff's Bivens claims that defendants intentionally interfered with his necessary medical care.

**II.     Motion To Amend**

Plaintiff seeks leave to file a second amended complaint. The proposed second amended

-13-

complaint names some 30 defendants.[13] The second amended complaint includes claims for violations of plaintiff's rights to free speech (Count I), to petition the government and access the courts (Count II), to due process (Count III) and to be free from cruel and unusual punishment (Counts IV and V). Plaintiff also asserts claims under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. (Counts VI and VII) and the Tucker Act, 28 U.S.C. § 1491 et seq. (Count VIII). Finally, plaintiff asserts a claim for civil conspiracy under federal and state law (Count IX).

### A.   Legal Standards

The Court shall freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Whether to grant leave to amend is a matter of discretion for the trial court. See Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1462 (10th Cir. 1991). The Court should normally refuse to grant leave to amend only upon a showing of futility, undue delay, undue prejudice to the non-moving party or bad faith of the moving party. See Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993) (citing Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1585 (10th Cir. 1993)). A district court may deny a motion to amend as futile if the proposed amendment would not

---

[13] The named defendants include the United States of America, U.S. Marshal, Deputy U.S. Marshal(s), President &/or CEO of CCA, President &/or CEO of CCA-LDC Unit, Registered Agent with the Kansas Secretary of State for CCA, Dr. Cherry (Managing Director of Facility Operations, CCA-LDC), Shelton Richardson (Regional Medical Director, CCA-LDC), Mindy Graham (Health Services Administrator, CCA-LDC), Dr. Stuart Grote, Dr. Linda McCandless, Dr. Jeffrey Cowen, Ronald Egli (Physician Assistant), Hallie Stephen-Castro (Nurse), Jeanette Moeller (Nurse), Michelle House (Nurse), Amanda Whistance (Nurse), Kayla Yindrick (LPN), Gregory Glawson (LPN), Samantha Ward (LPN), Thelma Daniels (LPN), Jeremy Olson (LPN), Kelly Tilton (LPN), Kathryn Ballinger (LPN), Racheal Haas (LPN), Ashley Fulkerson (LPN), Shellie Tull (LPN) and any other currently unknown Medical Director(s), Policy Maker(s), Policy Supervisor(s), Health Service Administrator(s), Pharmacy Supplier(s), Pharmacy Policy-Formulary Maker(s), Advisor(s), Supervisor(s), as well as any other Medical Personnel who are responsible for the acquisition of, and/or dispensing of pharmaceutical medications and/or pharmaceutical suppliers, FNU Alvarez, FNU Allen, and other unknown defendants. Doc. #33-1 at 3.

withstand a motion to dismiss or otherwise fails to state a claim. See Ketchum v. Cruz, 961 F.2d 916, 920 (10th Cir. 1992).

B.    Analysis

In conclusory fashion, plaintiff's proposed second amended complaint alleges misconduct by numerous defendants.[14]  For example, plaintiff alleges that from February 11 to March 4, 2010, "every defendant party hereto knew of plaintiff's medical needs and requirements, yet failed to provide treatments and or medications, prescribed or otherwise."  Doc. #33-1 ¶ 3.  In addition, plaintiff's proposed complaint does not refer to specific medications or medical needs.  For example, plaintiff alleges that at "various times and dates, the prescribed medical treatment, care and medications were denied, interfered with, tampered, altered, delayed inordinately too long, dispensed in the wrong manner, and/or the wrong dosage, and/or not provided, by all of the other named, or not, defendants, even though defendant Dr. Grote, had determined plaintiff's medical needs, and issued prescribed orders for those needs."  Id. ¶ 9; see id. ¶ 26 ("On various dates and times, defendants, named or not, retaliated against the plaintiff for complaining, filing grievances and seeking redress, by denial of commissary, hygiene products, mail and legal mail).  Plaintiff has not framed his proposed complaint with enough factual matter to state a plausible claim for relief.  See Iqbal, 129 S. Ct. at 1960; Twombly, 550 U.S. at 556.[15]

---

[14]    Plaintiff cannot bring his claim against the United States under Bivens because the federal government enjoys sovereign immunity against such claims.  See Nuclear Transp. & Storage, Inc. v. United States, 890 F.2d 1348, 1352 (6th Cir. 1989), cert. denied, 494 U.S. 1079 (1990).

[15]    To the extent plaintiff attempts to assert a claim against defendants for failure to investigate his grievance, the Court notes that a prisoner does not have a protected right to have a grievance investigated.  Neither the denial of a grievance nor the failure to investigate a grievance gives rise to a constitutional claim.  See Larson v. Meek, 240 Fed. Appx. 777, 780 (10th Cir. 2009)
(continued...)

**IT IS THEREFORE ORDERED** that the Motion To Dismiss Of Defendants Corrections Corporation Of America (CCA), Dr. Grote, Dr. McCandless, et al. (Doc. #28) filed April 5, 2011, which the Court considers only as to Dr. Grote, Dr. McCandless, Nurse Amanda LNU, Nurse Katy LNU and Nurse Thelma LNU, be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that plaintiff's Motion For Leave To Amend, Add Defendants, Causes Of Action And Change The Caption (Doc. #33) filed April 27, 2011 be and hereby is **OVERRULED**.

Dated this 8th day of December, 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[15](...continued)
(denial of grievances insufficient to establish personal participation in alleged constitutional violations); Walters v. Corrs. Corp. of Am., 119 Fed. Appx. 190, 191 (10th Cir. 2004) (prisoner's right to petition government for redress and right of access to courts is not compromised by prison's refusal to entertain grievance).